```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MEDIA TENOR INTERNATIONAL AG, and MEDIA :    13 Civ. 7223 (DLC)
TENOR LTD.,                             :
                                        :    OPINION AND ORDER
                 Plaintiffs.            :
                                        :
        -v-                             :
                                        :
MEDCO HEALTH SOLUTIONS, INC.,           :
                                        :
                 Defendant.             :
                                        :
----------------------------------------X
```

APPEARANCES

For the Plaintiffs:

Jorn A. Holl
Wuersch & Gering LLP
100 Wall Street, 10th Floor
New York, NY 10005


For the Defendant:

Elizabeth A. Bozicevic, Sarah C. Hellmann
Husch Blackwell
190 Carondelet Plaza, Suite 600
St. Louis, MO 63033

Amanda L. Nelson
Cozen O'Connor
45 Broadway, 16th Floor
New York, NY 10006


DENISE COTE, District Judge:

    Plaintiffs Media Tenor International AG and Media Tenor

Ltd. (collectively "Media Tenor") have brought this action

against Medco Health Solutions, Inc. ("Medco"), alleging breach
of contract, account stated, and quantum meruit.  The parties
have cross-moved for summary judgment.  Medco has moved against
all of Media Tenor's claims; Media Tenor seeks summary judgment
on an account stated claim only.  For the reasons set forth
below, Medco's motion for summary judgment is granted in part;
Media Tenor's motion for summary judgment is denied.


BACKGROUND

     The following facts are undisputed.[1]  Media Tenor
International AG is a Swiss corporation that provides media
research and analysis.  Media Tenor Ltd. is a New York
corporation with its principal place of business in Manhattan;
it is wholly owned by Media Tenor International AG and functions
as its New York office.  Medco is a Delaware corporation with
its principal place of business in New Jersey.  Medco provides
pharmacy benefit management services.

     On January 21, 2010, Media Tenor signed a Professional
Services Agreement ("PSA").  The PSA is signed by Roland Schatz

---

[1] Media Tenor did not comply with Southern District of New York
Local Rule 56.1 and, as a result, has not properly presented
many of the facts on which it relies in opposing summary
judgment and moving for summary judgment.  This statement of
undisputed facts is largely confined to the parties'
procedurally proper filings, and any facts included outside
those submissions are those unlikely to be the subject of any
reasonable dispute.

("Schatz"), on behalf of Media Tenor, and Barbara W. Cosgriff ("Cosgriff"), on behalf of Medco.  Schatz is the Chairman and CEO of Media Tenor.  Cosgriff was, at the time, Medco's Senior Vice President for Public Policy and External Affairs.  While the signatures are dated January 21, 2010, the PSA states that it is effective as of December 15, 2009.

Section 1 of the PSA, titled "Services to be Performed," requires Media Tenor to prepare a "Status Quo Analysis" based on 2009 data, and monthly reports beginning in January 2010.  It reads in relevant part as follows:

Project Title: Strategic Reputation Management

Period of Performance: Month-to-Month

Detailed Description of Services and Deliverables:
[Media Tenor] will perform a Status Quo Analysis,
indicating how 100 opinion leading media in Germany
and Europe covered Medco and Medco stakeholders as
platforms for investments, the top Management, all
events and other issues regarding the entry to the
European market, the competitors as well as all
relevant "Ambassadors" for the time period January to
December 2009 to help Medco develop realistic
communication goals for 2009/2010. . . . [Media Tenor]
will present the first results of the Status Quo
Analysis no later than 3 weeks after signing this
Service Agreement (i.e., the first week in January
2010).  Thereafter a workshop will take place until
week 8 to develop and install the communication action
plan for 2010 with already clear goals for the next
events.  As of January 2010, Professional will provide
Medco with a monthly report to strategically plan,
manage, and control the events plus the opportunities
coming out of Medco initiatives.  [Media Tenor] will
assist Medco in its rapid response team activities.

Person Performing the Services: Roland Schatz

Section 4 of the PSA, titled "Compensation," contains the contract language that is at the heart of this dispute.  It reads as follows:

A.   As consideration for the performance of the Services, Medco shall pay [Media Tenor] (1) upon signing of this Agreement, a one-time fee in the amount of US $35,000 for the codebook, which defines all Medco messages, projects and products, enabling the analysts of [Media Tenor] to qualify each text on Medco with respect to Medco's reputational goals (2) as well as a one-time fee in the amount of US $9,800 in respect of the Workshop and a Report for the 2010 Communications Plan and (2) <u>commencing with the month of January, 2010, a retainer fee in the amount of $25,000 per month, pro-rated for any partial month, in respect of the Status Quo Analysis and ongoing monthly monitoring and reporting</u> with respect to 100 opinion leading media in Germany and Europe.

B.   All payments made pursuant to this Agreement will be net payment due and payable within thirty (30) days after Medco's receipt of an undisputed invoice from [Media Tenor.]

(Emphasis added.)

Additionally, the PSA includes a "Termination" provision in Section 3, which reads in relevant part:

In the event of termination of this Agreement as provided hereunder, [Media Tenor] shall immediately discontinue all work hereunder and shall immediately cause any of its Agents to likewise cease such work. [Media Tenor] shall not be paid for any work done after receipt of the notice of such termination. "Agent" means any third party who provides Services and applicable Deliverables pursuant to this Agreement.

A.   <u>Termination for Convenience</u>: Medco reserves the right to terminate this Agreement with or without cause at any time upon thirty (30) days written notice to [Media Tenor].

4

    B.   <u>Termination for Cause</u>: Medco may immediately terminate this Agreement and/or any part hereof for cause in the event of any default by Professional, or if Professional fails to comply with any of the terms and conditions of this Agreement.

Finally, Section 17 of the PSA includes an integration clause, and Section 13 of the PSA states that New York law will govern its construction and enforcement.

Between January 21 and February 15, 2010, Media Tenor prepared the Status Quo Analysis that reviewed the pertinent European media coverage of Medco in 2009.  On February 16, 2010, Schatz presented the analysis to Medco executives, including Cosgriff, in Washington, D.C.  On February 15, Media Tenor sent an invoice to Medco in the amount of $309,800 -- $300,000 for the Status Quo Analysis and $9,800 for a workshop ("February 2010 Invoice").  Medco received the February 2010 Invoice but made no payment on the demanded sum.

In the Spring and Summer of 2010, Media Tenor sent Medco seven invoices for $25,000 each, for the January through July 2010 monthly reports.  Medco paid each of these invoices.  It paid $175,000, as well as another $35,000 for the codebook (as described in Section 4 of the PSA).

Media Tenor sent invoices to Medco for monthly reports based on the August, September, and October 2010 data ("August 2010 Invoice," "September 2010 Invoice," and "October 2010 Invoice").  Medco received but made no payment on these

invoices.

According to Media Tenor's pleadings, "Medco terminated the [PSA] on or about September 3, 2010.  Under the [PSA], this triggered a 30 notice period in which work continued."

Following the termination of the PSA, the parties continued to discuss the February 15 Invoice for $309,800.  In March 2012, Peter Harty ("Harty"), who was Vice President of Government Affairs at Medco, emailed Schatz, stating: "Roland, you should have received a check for the outstanding invoices ($300,000+) by now.  I know the paperwork was submitted to our accounts payable dept. weeks ago."  In a follow-up email, Harty wrote, "the money was to be wire transferred. . . . But we're tracking it down and will get it on its way as soon as we can.  Thanks for your patience."

On October 11, 2013, Media Tenor filed this lawsuit against Medco.  Following the initial conference on November 22, Media Tenor filed an Amended Complaint, which is the operative complaint in this action.

The Amended Complaint consists of six counts.  Count One is a breach of contract claim with respect to the PSA on behalf of Media Tenor International AG.  Media Tenor International AG seeks $384,800 in damages -- $300,000 for the Status Quo Analysis, $9,800 for the workshop, and $75,000 for the August-October 2010 monthly reports -- as well as prejudgment interest

at 9%.[2]  Count Two is a substantively identical claim on behalf of Media Tenor Ltd.

Counts Three and Four are account stated claims on behalf of Media Tenor International AG and Media Tenor Ltd. respectively.  Media Tenor alleges that Medco received the February 2010 Invoice, the August 2010 Invoice, the September 2010 Invoice, and the October 2010 Invoice, and failed to make an objection within a reasonable time.  For these account stated claims, Media Tenor also seeks $384,800 in damages as well as prejudgment interest at 9%.

Count Five is another breach of contract claim, but it is not based on the PSA.  Rather, Media Tenor alleges that Medco impliedly accepted the terms of a November 2009 offer letter, in which Media Tenor offered to conduct a 12-month Status Quo Analysis for 2009 at the cost of €17,500 for each month of analysis.  Media Tenor seeks €210,000, plus prejudgment interest.

Finally, Count Six is a quantum meruit claim.  Media Tenor contends that it provided the Status Quo Analysis in good faith to Medco, and Medco accepted this work.  Media Tenor seeks $300,000, plus prejudgment interest.

---

[2] Although the Amended Complaint also seeks damages for the July 2010 monthly report, Media Tenor has conceded that it was paid for this report.  Media Tenor has thus abandoned all claims for payment for its July 2010 monthly report claim or on the related July 2010 Invoice.

On May 15, 2014, Medco moved for summary judgment on all
six counts in the Amended Complaint.  On May 16, Media Tenor
moved for summary judgment on the account stated claim in Count
Three.  The motions were fully submitted as of June 13.

DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving
party bears the burden of demonstrating the absence of a
material factual question, and in making this determination, the
court must view all facts in the light most favorable to the
non-moving party.  Eastman Kodak Co. v. Image Technical Servs.,
Inc., 504 U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521 F.3d
130, 132 (2d Cir. 2008).

Once the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, the opposing party must
"set out specific facts showing a genuine issue for trial," and
cannot "rely merely on allegations or denials" contained in the
pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554
F.3d 255, 266 (2d Cir. 2009).  Nor may a party "rely on mere
speculation or conjecture as to the true nature of the facts to
overcome a motion for summary judgment," as "[m]ere conclusory

8

allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

As a preliminary point, New York law applies in this diversity action. A federal court sitting in diversity applies the choice-of-law rules of the forum state. <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 230 (2d Cir. 2014). New York choice-of-law principles "require the court to honor the parties' choice of law provision insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated." <u>Bank of New York v. Yugoimport</u>, 745 F.3d 599, 609 (2d Cir. 2014) (citation omitted). The parties having selected New York law, this Court will apply New York law.

I. Breach of Contract (Counts One, Two, Five)

Medco moves for summary judgment on all contract claims. To prevail on a breach of contract claim under New York law, a plaintiff must prove: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3)

breach of contract by the defendant; and (4) damages.  Harsco
Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  Medco's
contractual liability for the 2009 Status Quo Analysis and the
August-October 2010 monthly reports are addressed separately.


   A. 2009 Status Quo Analysis

   Medco contends that the PSA does not require it to pay
$300,000 for the Status Quo Analysis.  Under New York law,
"agreements are to be construed in accordance with the parties'
intent," "the best evidence" of which "is what they say in their
writing."  In re World Trade Ctr. Disaster Site Litig., No. 11-
4021, 2014 WL 2565821, at *5 (2d Cir. June 9, 2014) (citation
omitted).  "Accordingly, a written agreement that is complete,
clear and unambiguous on its face must be enforced according to
the plain meaning of its terms."  Id. (citation omitted).

   "At the outset, the court must determine whether the
language the parties have chosen is ambiguous . . . ."  Gary
Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d
302, 313 (2d Cir. 2013).  "A contract is unambiguous when the
contractual language has a definite and precise meaning about
which there is no reasonable basis for a difference of opinion."
Keiler v. Harlequin Enterprises Ltd., No. 13-1753, 2014 WL
1704474, at *4 (2d Cir. May 1, 2014).  "By contrast, ambiguity
exists where a contract's term could objectively suggest more

than one meaning to one familiar with the customs and
terminology of the particular trade or business." Id.
Ambiguity does not arise merely by virtue of the fact that the
parties volunteer different definitions. Law Debenture Trust
Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d
Cir. 2010). For instance, the proposal of an interpretation
that "strains the contract language beyond its reasonable and
ordinary meaning" does not create ambiguity where none otherwise
exists. Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d
425, 428 (2d Cir. 1992) (citation omitted). "The existence of
an ambiguity is to be ascertained from the face of an agreement
without regard to extrinsic evidence." In re World Trade Ctr.
Disaster Site Litig., 2014 WL 2565821, at *6 (citation omitted);
see also Keiler, 2014 WL 1704474, at *4 ("Whether a contract is
ambiguous is a question of law.").

In interpreting a contract under New York law, "words and
phrases . . . should be given their plain meaning, and the
contract should be construed so as to give full meaning and
effect to all of its provisions." Olin Corp. v. Am. Home Assur.
Co., 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted). "Any
interpretation of a contract that has the effect of rendering at
least one clause superfluous or meaningless is not preferred and
will be avoided if possible." Id. (citation omitted); see also
Amaranth LLC v. J.P. Morgan Chase & Co., 888 N.Y.S.2d 489, 493

(1st Dep't 2009) ("[A] court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." (citation omitted)).  "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P., 892 N.Y.S.2d 303, 307 (2009) (citation omitted).

If a contract is unambiguous, its meaning is "a question of law for the court to decide." JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009).  Where a contract is susceptible to multiple interpretations, however, "extrinsic evidence may be considered to determine the parties' intent." In re World Trade Ctr. Disaster Site Litig., 2014 WL 2565821, at *6.  And if "the intent of the parties cannot be determined from the contractual language itself, the ambiguity presents a question of fact to be resolved by a jury." Hoyt v. Andreucci, 433 F.3d 320, 331 (2d Cir. 2006).

Summary judgment is denied on the breach of contract claims relating to the Status Quo Analysis.  Section 4 of the PSA is ambiguous, namely with regard to how the phrase "per month" is to be understood in the following clause concerning Medco's obligation to pay:

commencing with the month of January, 2010, a retainer

12

fee in the amount of $25,000 per month, pro-rated for
any partial month, in respect of the Status Quo
Analysis and ongoing monthly monitoring and reporting
with respect to 100 opinion leading media in Germany
and Europe.

Under Medco's reading, the operative effect of the quoted
clause ends with the words "per month."  That is, as of January
2010, Medco is obligated to pay "a retainer fee in the amount of
$25,000 per month," for all of Media Tenor's services.  The
remaining language, discussing the Status Quo Analysis and the
ongoing monthly reports, describes these services.  Here, as
Medco paid Media Tenor $50,000 for its services in January and
February 2010 -- during which Media Tenor prepared, <u>inter alia</u>,
the Status Quo Analysis -- Medco contends that it has fully
satisfied its obligations under the PSA.  In other words, Medco
contends that the PSA does not obligate it to pay an additional
$300,000 for the Status Quo Analysis.

By contrast, under Media Tenor's reading, "per month"
modifies, through the "in respect of" clause, the "Status Quo
Analysis" and the ongoing monthly reports.  That is, Medco is
obligated to pay a fee of $25,000 per month of Media Tenor's
analysis.  In other words, while Medco contends that Media Tenor
should be paid based on the duration of its services, Media
Tenor contends that it should be paid based on the scope of its
work.  Here, because the Status Quo Analysis covered twelve
months, <u>i.e.</u>, all of 2009, Media Tenor contends that Medco owes

13

it $300,000 for the Status Quo Analysis.  This is in addition to the $50,000 Medco paid for January and February 2010, which Media Tenor contends were solely payments for the January and February 2010 monthly reports.

Each reading has linguistic support, even if one may be a more natural reading than the other.  At the very least, neither reading "strains the contract language beyond its reasonable and ordinary meaning."  Seiden, 959 F.2d at 428.  Moreover, each reading finds support in other provisions of the PSA, and neither is absurd as a compensation structure for the business relationship.  Accordingly, in light of these reasonable alternative readings, it cannot be said that Section 4 of the PSA has a "definite and precise meaning about which there is no reasonable basis for a difference of opinion."  Keiler, WL 1704474, at *4.  Thus, the contract is ambiguous, and the intent of the parties is a jury question, which may be resolved with the assistance of extrinsic evidence.

### B. August-October 2010 Monthly Reports

Medco also moves for summary judgment on the contract claims relating to the three monthly reports based on data from August through October 2010, contending that the PSA was

terminated before Medco began to work on these reports.[3]  Medco
relies on the assertion in Media Tenor's pleadings that Medco
terminated the PSA at the latest on September 3, 2010.[4]

Summary judgment with respect to the August monthly report
is denied.  The PSA provides that Medco has the right to
terminate "upon thirty (30) days" notice.  While Media Tenor has
not shown that it performed any work between September 1 and 3
that would entitle it to payment for work on the August report,
it has raised a question of fact as to whether it was entitled
to payment for work performed after September 3 during the
thirty-day period, i.e., until October 3, 2010.  If a jury
determines that Media Tenor was entitled to payment for work
through October 3, 2010, it would be entitled to payment for the
August 2010 monthly report, which was prepared sometime in
September 2010.

Summary judgment is granted, however, with respect to the
September and October 2010 monthly reports.  It is undisputed
that Media Tenor performed its work for the September report in
October, and Media Tenor has offered no evidence that it worked

---

[3] The monthly report for a given month is prepared in the
following month.  For example, the August monthly report is
prepared in September based on August data.  Accordingly, the
August monthly report would be provided to the client sometime
in September.

[4] Medco asserts that it terminated the PSA on July 15, 2010 but,
for purposes of its motion, relies on the date asserted by Media
Tenor in its pleadings.

on the September report between October 1 and October 3.
October 2 and 3, 2010 were a Saturday and Sunday.  Thus, Media
Tenor has failed to meet its burden of opposing Medco's motion
for summary judgment as to the September and October 2010
monthly reports.

Media Tenor protests that the September 3, 2010 notice of
termination was not effective since it was made by email, while
Section 16 of the PSA requires service of all "notices" by hand,
courier, or certified mail.  It is unnecessary to grapple with
this argument on the merits as Media Tenor's own pleadings
acknowledge the September 3, 2010 termination.  Because a party
may not avoid summary judgment by denying allegations in its
prior pleadings, see Rojas v. Roman Catholic Diocese of
Rochester, 660 F.3d 98, 106 (2d Cir. 2011), this argument fails.

Media Tenor further argues that it proceeded with the
October 2010 monthly analysis because this report was requested
by the Chief Executive Officer of Europa Apotheek, Medco's
European subsidiary.  Leaving aside the possible hearsay nature
of the evidence underlying this assertion, this argument fails
to extend the termination date of the PSA, which has an
integration clause.  The "Termination" provision of the PSA does
not include an exception based on requests for additional work.

## II. Account Stated (Counts Three, Four)

Both parties move for summary judgment on the account stated claims.  To show an account stated under New York law, the plaintiff must show that there has been "an agreement between the parties to an account based upon prior transactions between them."  LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (citation omitted).  An agreement need not be express, but may be implied by the defendant's partial payment on a disputed account or by the defendant's retention of a statement of account "without objecting to it within a reasonable time."  Id. (citation omitted).  "There can be no account stated where no account was presented or where any dispute about the account is shown to have existed."  Abbott, Duncan & Wiener v. Ragusa, 625 N.Y.S.2d 178, 178 (1st Dep't 1995).

Critically, "an account stated cannot be made an instrument to create liability when none otherwise exists." Martin H. Bauman Assocs., Inc. v. H&M Int'l Transport, Inc., 171 A.D.2d 479, 485 (1st Dep't 1995).  It "assumes the existence of some indebtedness between the parties or an express agreement to treat the statement in question as an account stated."  Id. Nevertheless, "[a]n account stated is an agreement, independent of the underlying agreement, regarding the amount due on past transactions."  Duane Reade v. Cardinal Health, Inc., 21 A.D.3d

269, 269-70 (1st Dep't 2005) (citation omitted).

Additionally, "a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract." Bauman Assocs., 171 A.D.2d at 485; see also Grinnell v. Ultimate Realty, LLC, 38 A.D.3d 600, 600 (2d Dep't 2007) (same, citing Bauman Assocs.); Erdman Anthony & Associates, Inc. v. Barkstrom, 298 A.D.2d 981, 982 (4th Dep't 2002) (same, citing Bauman Assocs.). "If plaintiff can prove an enforceable contract, then it will be able to recover under [that] cause of action," and the account stated claim can be dismissed. Bauman Assocs., 171 A.D.2d at 485. An account stated claim should not be dismissed as duplicative of a breach of contract claim, however, if the account stated claim gives rise to different damages. See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

Medco is granted summary judgment on the account stated claims. Here, the PSA constitutes the parties' agreement to engage in a set of transactions and sets the amount due for those transactions. If Media Tenor were to lose its contract claims at trial, it would not be entitled to the amount due under its invoices. See Bauman Assocs., 171 A.D.2d at 485. Moreover, Media Tenor has not suggested that it would be entitled to a different measurement of damages under the account stated claims than it would be under the contract claims. Cf.

<u>NetJets Aviation</u>, 537 F.3d at 175.  In its Amended Complaint, Media Tenor seek identical relief on the account stated claims as it does on the principal contract claims.  Accordingly, given the nature of the claims raised here, the account stated claims are dismissed.

Media Tenor argues that the existence of the underlying agreement does not bar, and is in fact necessary for, an account stated claim.  This is true.  But the underlying agreement here also defines the amount due.  Because it does, the account stated claims must be dismissed.

Finally, the parties dispute whether Medco timely objected to the February 15, 2010 Invoice for the Status Quo Analysis. As explained above, the parties dispute whether Medco is required by the PSA to pay for that work separately, in addition to its payment of the 2010 monthly invoices.  Resolution of that contractual dispute will resolve whether Medco must pay Media Tenor $309,800.  The PSA does not require Medco to timely object to an invoice to preserve its rights under the contract.[5]  Thus,

---

[5] Although Media Tenor suggests that Section 4(B) of the PSA imposes liability on Medco for failing to object to the issued invoices, Section 4(B) only applies to "payments made pursuant to this Agreement."  Because Medco disputes whether the February 15, 2014 Invoice properly calls for payment pursuant to the PSA, the requirements of Section 4(B) are inapplicable to the present dispute.

Additionally, the plain meaning of Section 4(B) is that it requires payment within 30 days on undisputed invoices.  It does not state that Medco is required to object to an invoice in

while evidence of Medco's conduct after it received the February 15, 2010 Invoice may be admissible at trial to shed light on the parties' understanding of the contract terms, that conduct does not operate as a waiver of Medco's contractual rights, and is not relevant for present purposes.

III. Quantum Meruit (Count Six)

Medco moves for summary judgment on the quantum meruit claim.  To recover in quantum meruit in New York, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted).

Summary judgment is granted.  Media Tenor has not opposed this prong of Medco's motion.  Under New York law, no quantum meruit claim can lie when there is a valid and enforceable written contract governing the same subject matter.  See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653, 656 (1987).  Because the PSA covers the subject matter of the Status Quo Analysis and because Media Tenor has not opposed the motion,

order to preserve its contractual rights, nor does it provide a deadline by which Medco must make an objection.

the quantum meruit claim is dismissed.


CONCLUSION

Plaintiffs' May 16, 2014 summary judgment motion is denied.
Defendant's May 15, 2014 summary judgment motion is granted in
part.  Counts Three, Four, and Six in the Amended Complaint are
dismissed.  Counts One and Two are dismissed as to the September
and October 2010 monthly reports.  A concurrently filed Order
will set forth a schedule governing the further conduct of
pretrial proceedings in this case.


        SO ORDERED:

Dated:    New York, New York
          June 27, 2014


                        _____
                              DENISE COTE
                     United States District Judge